IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

TINA JOURNEY,

    Plaintiff,

V.                            CIVIL ACTION NO. 3:04-0940

TAMMY LYNCH,

    Defendant.

**FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §1983, plaintiff, who was an inmate at Lakin Correctional Facility, has filed a complaint in which she contends that, while incarcerated, her custodians[1] failed to properly attend to her medical needs. There is presently pending before the Court defendant's motion for summary judgment, an unverified response to the motion filed by plaintiff and a reply filed by defendant. Viewing the facts and inferences to be drawn from those facts in the light most favorable to plaintiff, the facts with respect to plaintiff's claims can be summarized as follows:

---

    [1] Claims against Lakin Correctional Facility Medical Department, named as a defendant in the complaint, have been dismissed, leaving Tammy Lynch as the sole defendant.

In her complaint, which is the only verified document filed by plaintiff,[2] she states that her "problems," which ultimately were diagnosed as endometrial adenocarcinoma (or cancer) and required a complete hysterectomy, began in April of 2003 with "an extremely heavy brown discharge" and an inability to "go without sanitary protection." Thereafter, for ten months, plaintiff complained to the medical department, filing "repeated sick call requests." Sometime in January of 2004 she began passing blood clots and on February 13, 2004, was "bleeding profusely and became very dizzy." "Finally," plaintiff states she "was taken to the hospital." The affidavit of Tammy Lynch and plaintiff's medical records, submitted in support of defendant's motion for summary judgment, indicates that Lynch, a "licensed nurse practitioner," first saw plaintiff in early September of 2003 at a time when Lynch was working part-time at Lakin Correctional Center ("Lakin").[3] Prior to this time, plaintiff had been seen on a number of occasions for complaints of, among others, a "yellowish discharge, burning, ... itching," for which a physician prescribed "an antifungal remedy." When she was seen in April of 2003 for complaints of a "vaginal discharge," the "facility's physician" diagnosed "candidiasis (a yeast infection)" and "prescribed medication for this problem." In response to subsequent complaints involving the same or similar problems, blood tests were ordered and a staff physician performed a pelvic exam and pap smear. The physician "found normal mucosa and no evidence of infection or bleeding although there was apparently some discharge." No masses were noted, and the pap smear results eventually came back "normal and negative." Culture results were also reported as negative. In late August of 2003, plaintiff again complained of a "brown discharge," stating in her request for services that she was experiencing

---

[2] A verified complaint is treated as an opposing affidavit for summary judgment purposes. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3] In October of 2003, Lynch began working full-time at Lakin.

pain below her navel and right lower abdomen, that her period was happening two to three times a month and that she was bleeding heavily and passing blood clots.  It was in response to this request that, on September 2, 2003, the defendant Lynch first saw and examined plaintiff.  Based on her examination Lynch concluded "it did not appear that her vaginal discharge was out of the ordinary at this time."  She prescribed medication and instructed plaintiff "to seek follow-up care if her condition worsened."  Later that month Lynch obtained plaintiff's gynecologic records from treatments at a time prior to her arrival at Lakin.  In early October of 2003 plaintiff was seen by another healthcare provider at Lakin, complaining of heavy bleeding during her periods and of a brown discharge all the time.  On this occasion, she was instructed to submit a request form when her next period began and advised that the "medical department could conduct a pad count to verify heavy bleeding."  This was done; however, plaintiff was advised by this examining nurse that she appeared to be having "a normal period."  Though she was advised to continue with the "pad count," plaintiff apparently chose not to do so.  Defendant saw plaintiff on only one other occasion in 2003; however, her complaints at that time involved arthritic pain and a lump on her lower left gum.  Similarly, on the occasions she was seen by others in the latter part of 2003 the complaints were unrelated to her gynecological problems.

    On January 5, 2004, plaintiff filed a request for medical services, stating that she was "[h]aving brown discharge that has gotten worse and having abdominal pain."  On January 6, 2004, she was seen by defendant, who "examined [her] vulva, vagina and cervix" and "found nothing abnormal."  Lynch "ordered a genital culture taken and several days later learned that the test results were normal."  She also asked plaintiff to do a "pad count for the brown vaginal discharge," thereafter observing "that the discharge appeared to be 'breakthrough bleeding,'" which was "not

3

a cause for alarm if it is a small amount as this bleeding appeared to be." From January 6, 2004 to February 20, 2004, when Lynch ordered plaintiff transported to the hospital, she saw her on at least four occasions, ordering during this period "a thyroid panel for thyroid stimulating hormone," "Hemoglobin and Hematocrit blood tests to ascertain the severity of her bleeding,"[4] and "a pelvic ultrasound... ." Lynch "also consulted with a gynecologist in the community." As noted, plaintiff was transported to Pleasant Valley Hospital when a nurse found that she had "passed several blood clots." "Ultimately," Lynch states, the physicians at the hospital "diagnosed ... endometrial adenocarcinoma" and on March 17, 2004, plaintiff "was admitted to the hospital for a complete hysterectomy."

Plaintiff's status as a convicted prisoner "mandates scrutiny" of her treatment "under Eighth Amendment standards," Hutto v. Finney, 437 U.S. 678, 685 (1978), and evaluation of defendant's conduct in light of that amendment's prohibition of "cruel and unusual punishments." Analysis begins with Estelle v. Gamble, 429 U.S. 97 (1976), a case involving claims of denial of medical care, in which the Court held that "deliberate indifference to serious medical needs of prisoners," which could serve no penalogical purpose, "constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." Id. at 104. Subsequent decisions of the Court recognizing objective and subjective components of Eighth Amendment claims – in Estelle a "serious medical need" and "deliberate indifference" respectively – have adopted the framework and standards for decision set forth in Estelle.[5] Thus, in Wilson v. Seiter, 501 U.S. 294,

---

[4] The results came back "normal" on January 28, 2004.

[5] The courts are also in agreement with Estelle's observation that negligence "when diagnosing or treating a medical condition" – medical malpractice – "does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 106.

299 (1991), the Court, adopting Estelle's deliberate indifference standard in prison condition cases, pointed out that claims of cruel and unusual punishment "mandate inquiry into a prison official's state of mind," and in Farmer v. Brennan, 511 U.S. 825, 837 (1994), held that, as in the criminal law context, "a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." While "an official's failure to alleviate a significant risk he should have perceived but did not" is not "cause for commendation," such failure "cannot under [the Court's] cases be condemned as the infliction of punishment." Id. at 838.

Endometrial adenocarcinoma is, patently, a serious medical condition, and the objective component of an Eighth Amendment prima facie case is established. It is equally apparent, however, that the record before the Court lacks any evidence which would support the subjective component, deliberate indifference. Whatever might be said about the treatment afforded plaintiff by others at Lakin – and there is no indication in the evidence that medical personnel ignored plaintiff's medical services requests[6] – defendant's responses to plaintiff's medical problems cannot be characterized as deliberately indifferent either as a factual matter or as that term has been defined in the cases. During the relatively brief period she treated plaintiff prior to the diagnosis of cancer – from September of 2003 until February of 2004 – Lynch ordered numerous tests and reviewed the results of others in an attempt to diagnose plaintiff's condition, secured medical records from other sources and consulted with a gynecologist. Lynch did not determine or apparently even

---

[6] Plaintiff's medical records contain numerous requests for medications and treatment for various problems and in every instance responses to her requests are documented and appear to be prompt.

5

suspect that plaintiff was suffering from cancer,[7] and it could, perhaps, be argued that a correct analysis of plaintiff's symptoms or more and different tests would have resulted in earlier detection. Indeed, in her complaint plaintiff alleges that her problems were "due to Lakin Medical's neglect and poor system of medical care." As has been seen, however, negligence or medical malpractice is not actionable under §1983, and the issue before this Court is not, as the court has pointed out in Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998), "how obvious a condition must be before a [healthcare provider] is deliberately indifferent in not diagnosing it." "The correct question is whether the [healthcare provider] subjectively 'knows of' the serious medical condition itself, not the symptoms of the serious medical condition." Id. As in Johnson, there is in the record of this case "no evidence ... that [defendant] knew about the [cancer] itself," and as a consequence plaintiff has failed to meet her "burden of producing some evidence of [defendant's] subjective knowledge of the [cancer]." Id. As was also the case in Johnson, without that evidence plaintiff "cannot survive summary judgment." Id. at 169.[8]

On the basis of the record before the Court, it can only be concluded that, while plaintiff's medical needs were serious, there is simply no evidence from which a jury could conclude that the defendant, Tammy Lynch, was deliberately indifferent to those needs. Under such circumstances, defendant's motion for summary judgment should be granted and the action dismissed.

---

[7] It is, of course, not possible to determine on the present record when plaintiff's cancer first appeared or when it could have been detected.

[8] Rule 56(c), Fed.R.Civ.P., "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## **RECOMMENDATION**

On the basis of the foregoing findings of fact and principles of law applicable thereto, it is **RESPECTFULLY RECOMMENDED** that defendant's motion for summary judgment be granted and that this action be dismissed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to plaintiff and all counsel of record.

DATED: March 11, 2008

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE